## McNaughton *vs.* Cameron.

Where the holder of two promissory notes purporting to be made by the plaintiff, under the pretext of counting the money which the plaintiff had sent by an agent to pay them, and with knowledge of the fact that the plaintiff did not intend to pay the notes except on their being surrendered, took the money up from the table where it lay, and putting it in his pocket, without the consent of the plaintiff's agent, seized the notes, and refused to surrender either; *Held* that the taking of the money was tortious and wrongful, and that no title to it passed to the defendant.

*Held, also*, that if the defendant seized the money, against the declared will of the plaintiff, he became a trespasser, and was liable for the value of the

McNaughton *v.* Cameron.

same, with interest, in an action for the conversion thereof; notwithstand-
ing the plaintiff was justly indebted to him for the amount of the notes.
The liability of the defendant, in such an action, depends upon the question
whether the title to the money passed to the defendant; which could not
be, unless by the plaintiff's consent.
If upon that question there is sufficient evidence to be submitted to the
jury, it is error for the court to take the whole case from them and direct
a verdict for the defendant.

THIS action was brought for the wrongful conversion by
the defendant of a large number of pieces of gold coin,
amounting to $497, on or about the 31st of October, 1861.
The answer denied the conversion, and alleged that the
plaintiff, on the day above mentioned was indebted to the
defendant on two promissory notes, one amounting to $71,
and the other amounting to $426, and that this money was
paid and indorsed upon the said notes. On the trial at the
circuit, the plaintiff proved, as claimed by him, that on the
28th of October, 1861, the defendant having two notes, pur-
porting to be signed by him, the genuineness of one of which
he denied, both amounting to $495.16, he, the plaintiff, pro-
cured $497, in gold coin of the United States, and employed
John McNaughton and Donald McQueen to go with this gold
coin and get the notes; that he gave his said agents special
instructions to get the notes before delivering the money, and
not to part with the money until the notes were given up.
This sole condition on which he could receive the money was
stated to the defendant; and after all efforts were made, on
his part, to induce them to allow him to retain the notes, he
finally assented to the condition, and appointed an interview
on the next day, for that purpose. On that day McQueen
went, with the gold coin, to the house of the defendant.
The amounts of the notes having been ascertained and in-
dorsed thereon, the notes were placed by the defendant on a
table, at which McQueen and the defendant were seated,
when the defendant, for the purpose of getting the coin into
his hands, and under the pretext of counting the same, said
to McQueen—"Here is a piece of paper, McQueen; now

I'll take the gold, and tell off the prices, and you put it down." When he had taken up all the gold, he put it into his pocket and then seized the notes, and said "now I've got both; help yourself." The defendant kept the coin, and the notes. The plaintiff demanded the coin, before the commencement of this action. The defendant was allowed to show that he offered the notes to McQueen in December, 1861. The plaintiff insisted that upon the facts of the case the defendant never acquired any title to the gold coin, the plaintiff never having authorized the same to be delivered to him except upon the express condition that the notes were given up, of which condition the defendant was aware; that this condition was never waived by the plaintiff, nor authorized to be waived; and that the defendant had wrongfully converted the coin to his own use, and had proved no defense. And the plaintiff's counsel insisted upon his right to go to the jury, upon the facts, to sustain each and every of the above propositions; but the court held and decided that there was no proof to go to the jury upon any of said propositions, and directed a verdict for the defendant. The jury, under the direction of the court, rendered a verdict for the defendant, and the plaintiff excepted, and moved for a new trial on the exceptions, which were ordered to be heard at a general term, in the first instance.

*M. S. Newton*, for the plaintiff.

*W. S. Cogswell*, for the defendant.

*By the Court*, WELLES, J. Evidence was given, on the trial, tending strongly to show that the plaintiff did not intend to pay the notes held by the defendant, except on condition that Cameron surrendered them, and that Cameron knew it. If that was so, the taking of the money from the table by Cameron, in the manner described by the witness McQueen, and refusing to surrender the notes, was tortious

and wrongful, and no title to it passed to Cameron. Assuming that both of the notes were genuine, and that the plaintiff was justly indebted to the defendant for the amount of them with interest, the latter had no right to seize the money without the consent of the former. He could not take the law into his own hands and pay himself by seizing the money, against the declared will of the plaintiff. If he did so, he became a trespasser, and is liable for its value and interest, in this action. It all depends upon the question whether the title to the money passed to the defendant. This could not be, unless by the plaintiff's consent. On this question there was evidence sufficient to submit to the jury; and which should have been so submitted. The learned justice, at the circuit, took the whole case from the jury, and directed a verdict for the defendant. This, in my judgment, was error, for which a new trial should be awarded.

Ordered accordingly.

[Monroe General Term, September 5, 1864. *J. C. Smith*, *Welles* and *E. Darwin Smith*, Justices.]