THE GRAND TRUNK RAILWAY COMPANY *vs.* EDWARDS.

Where one receives from an agent money belonging to the principal, knowing
    that it is the money of the principal, and not that of the agent, and that
    the latter holds it in trust for his principal, as a simple depositary, the same
    may be recovered back in an action brought by the principal, for the con-
    version; where it does not appear that the money converted has been
    mingled with other money, so as to render it incapable of being identified.
The fact that the property converted is bank notes forms no legal objection to
    the maintenance of such an action; so long as they are capable of being
    ascertained and identified; as where they appear to have been delivered to
    the defendant at one time, by one act, and in one mass.

APPEAL from an order of the special term denying
the defendant's motion for a new trial.

*Harlo Hakes,* for the appellant.

*E. C. Sprague,* for the respondent.

*By the Court,* DANIELS, P. J. The defendant in this
action, previous to the 12th day of July, 1866, was agent
for the plaintiff for the sale of its railroad tickets, at
Hornellsville, in this State. About that time he sold out
his agency to William S. Dean, receiving from him cer-
tain promissory notes. The railroad company, upon the
transfer of the business being made, and upon the recom-
mendation of the defendant, accepted Dean as its agent,
and delivered him tickets to be sold for it, in the same
manner that the business had been previously transacted
by the defendant. The mode in which the business was
carried on was for the general agent of the plaintiff to de-
liver tickets to the local agent for sale, for which the
latter gave his receipt, acknowledging the receipt of the
number of tickets delivered to him, and containing the
statement or agreement that they were "to be sold and
accounted for in accordance with" the directions of the
general agent, "or returned when called for by him, or

Grand Trunk Railway Company *v.* Edwards.

any authorized agent." No specific directions are shown
to have been given to Dean for his government in the
sale of the tickets, or concerning the manner he should
account for those that were sold by him. But the evi-
dence of Dean himself, which, from the verdict rendered
by the jury they appear to have credited, notwithstanding
that given to impeach his general character, tended very
clearly to show that the tickets of the plaintiff were sold
by him upon the understanding that the proceeds received
from them were in his hands the property of the plaintiff.
If his evidence is reliable, and it must be assumed to be
so, inasmuch as the jury believed and acted upon it, he
not only received, but he also held, while it remained in
his hands, the money arising from the sale of the plain-
tiff's tickets, as its property, and in no sense whatever as
his own, except that belonging to him for his commissions,
and that the defendant understood that to be the case.
Dean testified that the defendant, on the 9th of November,
1866, wanted to have the notes paid which he held against
Dean. The latter informed him that he had no money;
the former responded that he had money for tickets;
to which Dean says that he replied : "I told him I had
money that belonged to the company, and no other. I
told him I had no money except from the sale of tickets.
I held off paying it. He said I could make it up." The
witness stated that he then paid $50, and that it was paid
"out of company money." On the Thursday following,
he says that they met at Near's office, and that he then
"counted out $300, and laid it on the desk. Near wanted
to know where I got so many small bills. I said I got
it for tickets. The defendant heard it, and said he did
not care what money it was, nor how small the bills were.
I paid it to Mr. Near; Near handed the money to the de-
fendant; I paid him five hundred and fifty dollars in all; he
knew that the money was company money, for I told him;
I told the defendant this money was company money;

this $360 was money that I received from the sale of Grand Trunk Railway tickets." Near corroborated the witness Dean in his relation of what occurred when the money was paid at his office. He said that " the $360 was paid in my office; I counted it; the money was in small bills, and some of them were State money; I asked Dean where he got so much money in small bills, and he said it was Grand Trunk money; the defendant said he didn't care what money it was, or where it came from, if he only got his pay. Edwards said to Dean, you can pay me out of company money and make it up out of commissions and insurance business." The defendant, while he admits that he did receive the $360 at Near's office, denies that he did so, understanding that it was money which Dean had received and was holding as the money of the plaintiff. But the jury have very evidently relied upon the statements given of the transaction by Dean and Near, and this court, under the well settled rules of law, has no right to interfere with their conclusion upon this subject. The question was one of fact, and the verdict of the jury upon it is therefore conclusive.

When the plaintiff's evidence was closed, the defendant moved for a nonsuit, on the grounds, first, that as the agent was to account for the sale of the tickets, the money derived from that source belonged to him; second, that the money received from selling the plaintiff's tickets was mingled with other money, and was incapable of being identified; third, that no cause of action was proved. The motion was denied, and the defendant excepted. When the cause was submitted to the jury the defendant excepted to so much of the charge as instructed them "that if they believed from the evidence that the $360, paid in Near's office when the notes were given up, was money that Dean received from the sale of the plaintiff's tickets by him, and that the defendant received it with notice that it was such money, the plaintiff is entitled to recover that amount in

this action." No other exceptions, presented upon the trial, have been urged upon the consideration of the court as constituting any grounds upon which the court would be justified in setting aside the verdict of the jury.

The evidence given upon the trial did not show that the $360, which was paid to the defendant at Near's office, and which was the money the plaintiff claimed to recover the value of in this action, had been mingled with other money so as to render it incapable of being identified. On the contrary, the evidence of Dean and Near tends very directly to show that it was not mingled with other money, and that its identity was ascertained and well established at the time when the defendant received it. The third ground urged as justifying a nonsuit is general, and may properly be included in the consideration of the exception taken to the charge. It may be that upon a strict legal construction being given to the terms of the agreement contained in the receipts taken for its tickets by the plaintiff, Dean would not have been bound to return to the company the identical money which he received for the plaintiff's tickets. But that was very evidently not his understanding of the obligation which he had incurred. He regarded the money as the money and property of the plaintiff, his principal, as fair dealing and sound morality very clearly required that he should, and this was made known to the defendant before he received the money. He therefore received it knowing that it was the plaintiff's money, and not that of the man who was delivering it to him. He understood that his debtor held it in trust for the plaintiff as a simple depositary, and that all the obligations of that relation were violated by the disposition which was made of it. And as he was no party to the contract existing between the agent and the principal, the law cannot justly allow him to protect himself from the consequences of his unlawful act, by affirming that the

agent had too liberally construed the obligation which it imposed in favor of his employer.

If the money thus held by the agent had been taken against his own assent, by the defendant, no doubt can be entertained as to the right of the plaintiff to maintain an action for the wrongful conversion, for the purpose of recovering the value of it. This was, in substance, held to be the law in the case of *McNaughton* v. *Cameron*, (44 *Barb.* 406 ;) and the wrongful assent of the agent to the perpetration of the wrong can in no manner alter the legal character of the act. The money as it was held by the agent was the property of the principal, and the misappropriation made of it by himself and the defendant constituted a convesion of it, within the well settled rule of the common law upon that subject. It was the assumption of dominion over it, in hostility to and defiance of the plaintiff's right of property in it; and that was a conversion. (*Boyce* v. *Brockway*, 31 *N. Y. Rep.* 490.) That the property converted was bank bills, forms no legal objection to the maintenance of the action, as long as they were capable of being ascertained and identified. And the evidence shows that they were, for they appear to have been delivered to the defendant, at one time, by one act, and in one mass. Their identity was as distinct and visible as was that of the gold coin in the case of *McNaughton* v. *Cameron*, already referred to, and more so than that of the dollars in the case of *Jackson* v. *Anderson*, (4 *Taunt.* 24,) where it was held that the action of trover could be maintained. It was also more complete than the identity of the money received by the defendant in *Jones* v. *Fort*, (9 *Barn. & Cres.* 764,) where the court assumed that trover could have been maintained if a proper demand had only preceded the commencement of the action. The cases of *Snow* v. *Peacock*, (3 *Bing.* 406 ;) *Snow* v. *Leatham*, (2 *Car. & P.* 314 ;) *Easeley* v. *Crockford*, (10 *Bing.* 243 ;) *Graves* v. *Dudley*, (20 *N. Y. Rep.* 76 ; *Gordon* v. *Hostetter*, (37 *id.* 99,) are also

authorities holding that trover may be maintained for the conversion of bank notes. (*See also* 1 *Hill. on Torts*, 53, § 42.)

The case of *Walter* v. *Bennett*, (16 *N. Y. Rep.* 250,) is supposed to countenance a different conclusion, where the money of the principal has been misappropriated by the unauthorized act of the agent, and to be adverse to the plaintiff's right to recover in the present action. Upon a careful examination of that case, it will be found to contain nothing sustaining that supposition. It was an action of trover for converting a draft and its proceeds; and the conversion was alleged to have consisted in the deposit of the draft with the banker of the agent, and the crediting of its amount in his account, accompanied with his refusal to pay over the proceeds. The court held that it was the agent's duty to collect the draft, under the authority that appeared to have been conferred upon him, and as its proceeds had never in fact come into his hands, he could not, with anything like legal propriety, be charged with the conversion of them. The most that the agent had done was to secure a credit under which he was entitled to receive the proceeds of the draft. The proceeds themselves he had not received, and consequently could not have converted them. That case contains nothing which will justify the defendant, who was not a party to the agent's agreement, in wrongfully appropriating to his own use the money he was informed was not the property of the person he received it from, but of the plaintiff in this action. The law does not yet deserve the reproach of throwing the mantle of its protection around a transaction of the character which the jury have found this one to have been.

The defendant's counsel claimed that the case of *Harris* v. *Schultz*, (40 *Barb.* 315,) may be logically extended so as to produce that result; but the decision made by the court fails to justify that conclusion. It turned upon a defect

Grand Trunk Railway Company *v.* Edwards.

of parties, more than that of liability; the court holding that the demurrer should be sustained, because the plaintiff had failed to join as defendants those who were liable to him for the moneys they had jointly collected. It was so essentially different from the present case in the other controlling features already discussed, as to constitute no legal justification for the defendant in the present action. The plaintiff has no contract with him under which it could maintain an action for the recovery of its money, unlawfully received by him. He is justly charged with a wrong, by acquiring the money which the plaintiff's agent was holding for it, and the proper manner of redressing the injury which it occasioned is that which has been adopted in the present instance. The plaintiff might, no doubt, have waived the wrong and sued him for money had and received, on the promise which the law would have implied against him, from the fact that without right he had received the plaintiff's money; but that it was not bound to do. The law has provided the other action, that of proceeding directly for the damages occasioned by the wrong, and the plaintiff, as it had a right to do, has elected to pursue that remedy.

Under the circumstances disclosed by the evidence in this case, the court was right in refusing to nonsuit; and in the charge which was delivered to the jury. No question was made upon the trial concerning the appropriation which should have been made of the payment made by Dean. If there had been, its specific appropriation to some other portion of his indebtedness might have been shown by the plaintiff. It is therefore too late to raise that question for the first time upon the present appeal.

The order denying a new trial should be affirmed.

MARVIN, J., dissented.

                                   Order affirmed.

[ERIE GENERAL TERM, November 16, 1868. *Daniels, Marvin* and *Barker,* Justices.]