COLEMAN BENEDICT *v.* NATIONAL BANK OF THE COMMONWEALTH.

Where a person has been induced to enter into a contract by fraud, he may, upon discovering the fraud, elect, either to rescind the contract and sue in tort, or to waive the tort and affirm the contract, but having once made his election, he is bound by it, especially where the rights of third parties have intervened.

The fact that the fraud used to induce a party to make a contract constitutes a felony, does not prevent the party deceived from affirming the contract; as a waiver of a tort in a civil action would not prejudice a criminal action for the felony.

The plaintiff having been induced to make a loan on call on the security of forged bonds, after discovering the fraud, sued on the contract, and attached the money standing to the credit of the borrowers in the bank in which they had deposited the proceeds of the fraudulent loan, but proceedings in bankruptcy having been taken against the defendants in that suit, he discontinued and brought an action in tort against the bankrupt and his assignee in bankruptcy, claiming that the money in the hands of the bank was the identical money obtained from him by fraud, and that he was entitled to it as owner. *Held*, that by the proceedings in the first suit he had elected to affirm the contract and was barred from bringing a second suit founded in tort.

APPEAL by plaintiff from a judgment of this court, entered on a decision of a judge at trial term.

The facts are as follows: On December 8th, 1869, the plaintiff loaned the firm of Wm. E. Gray & Co. the sum of $10,000 by a check for that amount, which was deposited by, and placed to the credit of, Gray & Co. in the National Bank of the Commonwealth. As collateral security for such loan, the plaintiff received a $1,000 United States bond, and what purported to be a $10,000 bond of the State of New York. On December 10th, 1869, the plaintiff made a further loan to the same firm of $25,000, by a check for that amount, which was deposited and placed to their credit as aforesaid. The plaintiff also received as collateral security for this last mentioned loan, a United States bond for $15,000, and what purported to be a $10,000 bond of the State of New York. Both of the $10,000 bonds of the State of New York proved to be forgeries.

The checks of the plaintiff were deposited with other mon-

eys, and mingled with the general fund belonging to the firm of Wm. E. Gray & Co., in the Bank of the Commonwealth, from which payments were made from time to time, upon numerous drafts drawn by them thereon. On December 11th, 1869, both Gray and Pratt (composing the firm of Wm. E. Gray & Co.) absconded, and, at that time, there was a balance to their credit in said bank of $18,253 23. The plaintiff, then fully cognizant of the fact that the State bonds were forgeries, commenced a suit upon contract against the firm of Wm. E. Gray & Co., asking judgment for $35,000, the amount of said loans and interest. On the same day he procured an attachment against the property of the firm, upon an affidavit showing their indebtedness to him for the amount of $35,000, the forgery of the bonds and that the debtors had absconded. This attachment was served on the Bank of the Commonwealth, December 11th, 1869. On the 16th of December, 1869, the plaintiff, with full knowledge of the fraud, sold the valid securities, and credited the proceeds of the sale upon the original indebtedness of Gray & Co. to him.

On January 5th, 1870, a petition for the involuntary bankruptcy of Gray & Co. was filed, and an injunction was issued in pursuance of the bankrupt act, enjoining the plaintiff and the sheriff from interfering with the property of the bankrupts. On February 12th, 1870, the defendant Ingraham was appointed assignee of Gray and Pratt, and received an assignment of their estate in conformity with the act. In April, 1870, on consent of the plaintiff's attorneys, such attachment was dissolved. On April 22d, 1870, this action was brought to recover the balance due the plaintiff from said firm, out of the moneys held by the Bank of the Commonwealth, to their credit. The bank resisted such payment on the ground that the amount thus held, was claimed by parties other than the plaintiff.

The court below decided that the funds deposited with said bank belonged to the defendant, as assignee in bankruptcy, and from the judgment entered thereon appeal is taken.

*Andrew Boardman*, for appellant.

I. The assignee in bankruptcy has no better title to the

fund in bank than Gray and Pratt. The question is whether they could dispute the plaintiff's title to that money (*Mickles* v. *Townsend*, 18 N. Y. 575; *Bush* v. *Lathrop*, 22 Id. 535; *Hartley* v. *Tatham*, 2 Abb. Ct. App. Dec. 333; *Smith* v. *Felton*, 43 N. Y. 419).

II. Equity favors the person wronged as against the wrong-doer to the extent of its power, and is astute and diligent to restore to him his property or its equivalent. (*a.*) Thus if a trustee apply money of a trust estate to his own use, equity will follow it to wherever it can be tracked, and impress upon it the conditions of the trust (*Aberdeen Railway Co.* v. *Blaiklie*, 1 Macy, 461; *Gardner* v. *Ogden*, 22 N. Y. 327; *Colburn* v. *Morton*, 3 Keyes, 296). (*b.*) The doctrine of resulting trusts is based on this equitable principle of allowing a party to follow his funds or property into whose hands soever they can be traced (*Reid* v. *Fitch*, 11 Barb. 399; *Swinburne* v. *Swinburne*, 28 N. Y. 568). (*c.*) In its determination to see that justice is done, a court of equity will disregard the legal and technical rules which would govern in a court of law (*Smith* v. *Felton*, 43 N. Y. 419). (*d.*) Even at law, " an action for money had and received, is maintainable whenever the money of one man has, without consideration, got into the pocket of another" (*Hudson* v. *Robinson*, 4 M. & Sel. 475; *Clark* v. *Shee*, 1 Cowper, 197; *Marsh* v. *Keating*, 1 Bing. N. C. 198).

III. It is clearly just that the plaintiff should be allowed, as against Gray & Pratt, to receive back the money which they obtained from him by fraud and felony, and this can readily be done in this case (*Grand Trunk R. Co.* v. *Edwards*, 56 Barb. 408; *Jackson* v. *Anderson*, 4 Taunt. 24; *Graves* v. *Dudley*, 20 N. Y. 76; *Gordon* v. *Hostetter*, 37 Id. 99). Even at law, a person who *fraudulently* mingles the money or property of another with his own, cannot be permitted to urge such admixture as a reason against restoring that which he has fraudulently obtained (*Silsbury* v. *McCoon*, 3 N. Y. 379; *Ryder* v. *Hathaway*, 21 Pick. 298; *Seymour* v. *Wyckoff*, 10 N. Y. 213; *Beach* v. *Forsyth*, 14 Barb. 499).

IV. The act of the plaintiff in commencing proceedings against the property of William E. Gray & Co. does not estop

the plaintiff from maintaining this action. If the act of the plaintiff may be deemed an agreement to waive the tort, it was certainly an agreement coupled with a condition, the condition being to waive it, provided he could retain his attachment. Being deprived of that, the condition failed, and the agreement and election fell with it and became void (*Hurst* v. *Gwennap*, 2 Stark. N. P. 306; *Morris* v. *Robinson*, 3 B. & C. 196; *Bivin* v. *Morris*, 4 Tyrr. 485; *Valpy* v. *Sanders*, 12 Jurist. 483).

V. In cases of felony there is no power to waive the tort. It can neither be waived, compounded, compromised nor ratified, and there is, therefore, no right of election to make such waiver (*Spread* v. *Morgan*, 11 H. L. Cases, 588, 13 L. T. N. S. 164; *Brooke* v. *Hook*, 24 L. T. Rep. N. S. 34; *Duncan* v. *McCullough*, 4 S. & R. 487; *Chesterfield* v. *Jansen*, 2 Ves. 125.

*John E. Burrill*, for respondents.

I. The action commenced by the plaintiff to collect the debt, with full knowledge that it had been fraudulently contracted, was a waiver of the tort and an affirmance of the contract, and the plaintiff thereby made his election, and was not at liberty afterwards to disaffirm the contract and proceed in tort (*Morris* v. *Rexford*, 18 N. Y. 552; *Adams* v. *Sage*, 28 Id. 103; *Wilmot* v. *Richardson*, 6 Duer, 328; *Kinney* v. *Kiernan*, 2 Lansing, 492).

II. The money fraudulently obtained by Wm. E. Gray & Co. cannot be traced, so as to show that the money in bank is the identical money borrowed (*Carol* v. *Cone*, 40 Barb. 220; *Marsh* v. *Oneida Central Bank*, 34 Id. 298; *Beckwith* v. *Union Bank*, 9 N. Y. 211; *Chapman* v. *White*, 6 Id. 412; *Dykers* v. *Leather Bank*, 11 Paige, 616).

BY THE COURT.*—LARREMORE, J. [after stating the facts].— The principal questions involved in the consideration of this case are:

1st. Did the plaintiff, after full knowledge of the fraud, affirm the contract?

* Present, DALY, CH. J., ROBINSON, and LARREMORE, JJ.

2d. Is he entitled to the fund held by the bank, or any portion thereof, as the property loaned by him to Gray & Co. ?

It is a well settled principle of law that an innocent party to a fraudulent contract may rescind it, and sue in tort for the recovery of the identical property with which he has parted possession. And the rule is of equal authority that he may affirm such contract and waive the tort. He cannot have both remedies, because they are inconsistent with each other. He must make his election, and having made it, must be held to it (*Morris* v. *Rexford*, 18 N. Y. 552, and cases there cited; *Adams* v. *Sage*, 28 Id. 103 ; *Wilmot* v. *Richardson*, 2 Keyes, 519). He cannot be allowed, even though mistaken in his remedy, to change it, especially when the rights of third parties have intervened. Judged by this theory, it will scarcely be claimed that the plaintiff had a meritorious cause of action.

On the 11th of December, 1869, with a full knowledge of the fraud committed upon him, he voluntarily commenced an action on the contract for money loaned, and procured an attachment against the property of Gray & Co. It is urged that plaintiff was then ignorant that the proceeds of his checks had been deposited and were then held by the Bank of the Commonwealth.

But it is admitted that on the *same day* he caused his attachment to be served on the bank where the moneys in question were deposited and which were held by the bank under the attachment, as the property of Gray & Co. Plaintiff must have known, after the process had been served, that the checks had been so deposited, and that Gray & Co. had a cash balance in the bank. Yet he continued the lien of his attachment upon the very fund in dispute, as the property of Gray & Co., and only consented to a dissolution of it when such a course became imperative by the proceedings in bankruptcy.

I think plaintiff exercised and manifested his election in bringing his action on the contract, and that the subsequent discontinuance of the proceedings then taken could not change the legal effect of his action. He had full knowledge of the fraud, and the decision then made, although it might have been influenced, could not be impaired, by his want of knowledge

as to what disposition had been made of the proceeds of the checks.

Having, in the first instance, treated the fund as the property of the debtors, he cannot now escape the consequences of his own deliberate act, nor prejudice the rights of other creditors to the fund. It is not disputed that the assignee in bankruptcy is entitled to the moneys now held by the bank if they belonged to Gray & Co., and I think the finding of the court below upon this point was correct.

Having reached this conclusion, it can hardly be necessary to examine the second branch of the case.

It may be observed, however, in this connection, that the checks given by plaintiff to Gray & Co. were deposited by them in bank and mingled with a general fund from which various sums were drawn from time to time on their account. Whether the identical proceeds of those checks have already been drawn out, or any portion thereof, and if so, what amount, or what now remains, are questions of doubt and uncertainty. An inspection of the bank account shows the impossibility of ascertaining such a result by any process of reasoning or mathematical calculation.

The cases cited by the learned counsel for the appellant, do not meet the question of waiver and affirmance that was raised in bar of this action.

*Graves* v. *Dudley* (20 N. Y. 76) decides that on an executory contract upon which $250 in bills had been delivered, specific performance might be maintained for the recovery of the money; that there was nothing in the nature of money or bills to make a delivery work a change of ownership, when such was not the intention, or to prevent them from being specifically recovered when so identified that delivery might be made.

*Gordon* v. *Hostetter* (37 N. Y. 99) holds that where money is embezzled, an action for damages will lie without proving the specific property taken and converted.

In the *Grand Trunk Railway Co.* v. *Edwards* (56 Barb. 408), it was held that one who receives money from an agent, knowing that it belongs to the principal, is liable in an action

for conversion where the money has not been mingled with other money, so as to render it incapable of being identified.

*Silisbury* v. *McCoon* (3 N. Y. 379) is an authority that property taken from the owner by a wilful trespasser, and by him converted into a thing of different species (such as corn into whiskey), may be recovered by and belongs to the owner of the original material.

*Seymour* v. *Wyckoff* (10 N. Y. 213) holds that pork packed in barrels, consigned to commission merchants for sale, does not lose its identity by being stowed with a large quantity of the same quality and brand.

It is obvious that the decisions in the cases referred to rest mainly upon the fact that the property sought to be recovered could be identified. They were cases also in which the parties injured sued the *wrong-doer*, and where it was clear that no absolute surrender of ownership was intended.

It was also claimed that in a case of felony there is no power to waive the tort; that the plaintiff would have no right to compound the forgery, and thereby prevent a criminal prosecution of it. This is undoubtedly true, but such a prosecution can in no way be prejudiced by a *waiver* of the tort in a civil action. Besides, the perpetration of the forgery, or the knowledge of it by Gray & Co., is not conclusively established. It is true that they absconded on the very day upon which the second check was given, but the loans were negotiated by the agent of Gray & Co., and it would still be competent for them to show in a criminal proceeding against them that they both took and pledged the bonds in question in the belief that they were genuine.

I think the judgment in this case should be affirmed.

Judgment affirmed.