ROXANNA B. BROWN, AS EXECUTRIX, ETC., OF MARCUS J. ELY AND OTHERS, RESPONDENTS, v. GEORGE H. HOUCK, APPELLANT, IMPLEADED WITH GEORGE W. PROVOST.

*Action to recover money, loaned by a tax collector from taxes collected by him — when it cannot be recovered from one receiving it in good faith and for a valuable consideration.*

The plaintiff having been compelled, as one of the sureties upon the bond of a town tax collector, to pay to the county treasurer the sum of $1,423 which had been received but not paid over by the collector, brought this action against the defendant, alleging that he borrowed of the tax collector $1,211.92 of the tax moneys collected by him for taxes, knowing that the moneys so borrowed were tax moneys.

Upon the trial the defendant offered, but was not allowed, to prove that the tax collector was a member of the firm of John Provost & Son; that after the defendant had borrowed the money he sold beef to the said firm for some five months; that it was agreed that the money in his hands should go to pay for any balance that might be due him for meat furnished, and that upon the settlement of the accounts the firm was indebted to him for more than $800; that he did not know that the money borrowed was part of the tax moneys.

*Held*, that the court erred in excluding the evidence; that if the defendant could have shown that he did not know the funds borrowed by him were tax moneys,

and that he, in good faith, sold and delivered to Provost meat of the value of $800, with the understanding and agreement that it should be deducted from the loan, it would, to that extent, establish a defense.

APPEAL from a judgment in favor of the plaintiffs, entered upon a verdict rendered at the Monroe Circuit.

*Raines Brothers,* for the appellant.

*J. A. Stull,* for the respondents.

HAIGHT, J. :

In the spring of 1876, George W. Provost was elected collector of taxes for the town of Rush. He qualified and entered upon the discharge of his office, giving the usual official bond as town collector, signed by the plaintiffs as sureties. In December of that year the annual tax roll of the town, with warrant attached, was issued to him commanding him to collect the sum of $11,165.05 and pay the same over to the county treasurer. Of the sum collected by him as such collector he paid over to the treasurer all except the sum of $2,065, as to which sum he made default. Thereafter the plaintiffs, as sureties upon his bond, were required to and did pay to the treasurer of the county the sum of $1,423, which sum, with certain personal property of Provost's which they had caused to be sold and converted into money, made up the deficit. This action was brought to recover of the defendants the amount so paid by the plaintiffs. It was claimed, on the part of the plaintiffs, that the defendant Houck borrowed of George W. Provost $1,211.92 of the moneys collected by him as town collector, and that Houck knew at the time he so borrowed the money that it was tax moneys. It was claimed, on behalf of the defendant Houck, that. he did not know that the moneys borrowed were tax moneys; that he had subsequently sold to Provost a large quantity of beef, and had made some payments in cash by which the money loaned was fully repaid and settled. The evidence upon the questions of the loans being made from the tax, and of Houck's knowledge that it was tax money, was conflicting. It was of that character that made it a question for the jury to dispose of. The jury would have been justified in finding that at least a portion of the money loaned by Provost to Houck was tax money, and that Houck knew it at the time of making the loan.

So that there was no error in refusing the defendants' motion for a nonsuit.

The court in its charge first submitted to the jury the question as to whether or not the loans made were in fact made from the tax money, and then said : " If you come to the conclusion that this was tax money the plaintiffs are entitled to recover. It makes no difference on this branch of the case whether Houck knew it was tax money. If he borrowed the tax money it was his misfortune. The only question for you up to this time is whether this was tax money, and how much of it Houck had ?" To this the defendant excepted, and requested the court to charge that if Houck, not knowing that any of these moneys were tax moneys, received the moneys and parted with the full and fair consideration for them, they cannot be recovered back. This request was declined and exception was taken. Upon the trial the defendant offered to show that the firm of John Provost & Son, of which the defendant George W. Provost was a member, became indebted to the defendant Houck for the price of beef sold to them between the first of May and the middle of October, 1877, for a balance of over $800 ; that upon a settlement of accounts it was agreed to apply the meat balance upon the loans made by Houck. And, again, that an agreement was made at the time, that the money that Houck had in his hands should go to pay for any balance that might be due him for meat furnished by him during that summer. These offers were objected to ; the objection was sustained and the evidence excluded. The question is thus presented as to whether or not this action can be maintained if the defendant Houck has sold and delivered beef to the defendant Provost in payment of the money loaned, without knowledge that it was tax money. The plaintiffs, as sureties, having been required to make good the loss to the treasury of the money misappropriated, undoubtedly became subrogated to all the rights and remedies of the rightful owner, and as such may pursue the money in the hands of all persons in which it may be found who have received it with knowledge that it was tax money, and the fact that a person had received such money in payment for property sold would be no defense, if at the time he had notice, actual or constructive, of the character of the money ; but a *bona fide* seller for a valuable consideration, without notice, express or

implied, is entitled to full protection. And if a trustee loans a trust fund in breach of the trust, and the borrower has notice of the trust and the breach, he becomes a *quasi* trustee, and he cannot separate the loan from the trust so as to relieve himself from liability to the *cestui que trust.* If, however, the borrower has no notice of the trust and of the breach — if he subsequently and before knowledge repays the same by the sale of property for full value, he should be protected even though he would not be permitted to apply the sum upon an antecedent debt. (1 Perry on Trusts, § 218; 2 id., §§ 828 to 832, inclusive; Tiffany & Bullard on the Law of Trusts, 197; *Thorndike* v. *Hunt,* 3 De Gex & Jones' Ch., 563; *Stephens* v. *The Board of Education of the City of Brooklyn,* 79 N. Y., 183; *The Grand Trunk Railway Co.* v. *Edwards,* 56 Barb., 408; *Segelken* v. *Meyer,* 94 N. Y., 473; *Boyce* v. *Brockway,* 31 id., 490; *The Fifth National Bank* v. *The Village of Hyde Park,* 101 Ill., 595; *Wetmore* v. *Porter,* 92 N. Y., 76.)

If, therefore, the defendant Houck had no knowledge that the funds borrowed by him were trust funds, and could have shown that in good faith he sold and delivered to the defendant Provost meat of the value of $800, with the understanding and agreement that it should be deducted from the amount loaned, it would to that extent establish a defense, and we are of the opinion that the exclusion of the evidence was erroneous.

Judgment should be reversed and a new trial ordered, with costs to abide the event.

SMITH, P. J., BARKER and BRADLEY, J.J., concurred.

Judgment reversed and new trial ordered, with costs to abide event.