JOHN SEGELKEN, by his Guardian, etc., Respondent, *v.* OTTO MEYER, Appellant.

An action to recover money or personal property belonging to an infant may be brought in the name of the infant by his guardian *ad litem*, although he has a general guardian. While the statute gives to the latter the custody and management of the infant's personal estate (2 R. S. 150, § 3), the beneficial interest is in the infant and he may maintain the action. (Code of Civil Procedure, § 468.)

Plaintiff's father died intestate ; his mother was appointed administratrix and also general guardian for the infant children, five in number. A settlement of the accounts of said administratrix was had and a final decree entered by the surrogate fixing the shares of the infants; subsequently two of them died intestate. Defendant was the attorney, counsel and proctor for the widow, and as such received moneys belonging to the

estate. Upon an accounting he gave to the widow a written acknowledgment stating that there was due to her, as guardian for the three surviving children, the sum of $1,500, payable according to the surrogate's decree, interest thereon to be paid semi annually. Subsequently the widow died and K. was appointed by the surrogate general guardian of the plaintiff, who, being still an infant, brings this action by said K. as his guardian *ad litem,* duly appointed for that purpose to recover his share. *Held,* that the action was well brought, and that a good cause of action was shown for $500 ; that the acknowledgment was an admission that the money belonged to plaintiff and had been held by his general guardian in trust for him; and, even if not originally collected and received by defendant for plaintiff, but paid over to him by said guardian, as he had knowledge that it was a trust fund, he received it impressed with the same trust, and plaintiff's share therein having been ascertained and agreed upon, he could follow the fund and maintain an action for his share.

The acknowledgment also stated that defendant was indebted to the widow as next of kin of the two deceased children in the sum of $1,000. It was admitted that this sum was due the widow and the three surviving children as next of kin, she in her own right and as guardian for them being entitled to receive it ; it also appeared that defendant had promised plaintiff's attorney to pay his share, and raised no objection because of the non-appointment of an administrator. *Held,* that in the absence of proof that administration upon the estates of the deceased children had been granted, plaintiff was entitled to recover in this action his share (one-fourth) of said sum.

While a person may not, as next of kin simply, sue to recover personal property of a deceased person, a recovery by next of kin may be permitted without the intervention of an administrator, under special circumstances, as where his right to the property is clear and has been admitted by defendant.

An agent or person acting in a fiduciary capacity is not subject to an action for tort for mere acts of omission, as for not paying over money due, but only for acts of misfeasance, and in an action against him for not accounting or not paying over a balance found due on an accounting, the plaintiff does not, by adding to the allegation of refusal to pay an assertion that defendant has converted the money to his own use, convert the action into one for tort ; the addition is mere surplusage.

The complaint alleged the employment of defendant as attorney, etc., and that while so employed he received the money in question "in a fiduciary capacity," that the same had been demanded, but that he neglected and refused to pay the same and had converted it to his own use. *Held,* that the cause of action was one *ex contractu* not *ex delicto.*

Also *held,* that proof that defendant had received money to which plaintiff was entitled was sufficient to sustain the action ; that notwithstanding the allegation that defendant received it in a fiduciary capacity, if no

order of arrest had been granted during the pendency of the action, the effect of the judgment would not be to subject defendant to an execution against his person (Code of Civil Procedure, § 1487), and so proof of the allegation was not essential.

In the cases where under the Code of Civil Procedure (§ 550) the right to arrest depends upon facts extrinsic the cause of action, and where no execution against the person can issue unless an order of arrest has been obtained and executed before judgment, these extrinsic matters need not be alleged in the complaint, and if alleged, are immaterial to the cause of action and need not be proved upon the trial.

(Argued December 15, 1883 ; decided January 22, 1884.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made September 14, 1880, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury. (Reported below, 22 Hun, 6.)

This action was brought to recover for moneys alleged in the complaint to have been received by defendant, an attorney and counselor, "in a fiduciary capacity," which belonged to the plaintiff as next of kin of John F., Adeline and Mary S. Segelken, deceased.

The material facts are stated in the opinion.

*Almet F. Jenks* for appellant. If the action were brought in tort it could not be maintained. (*Moran* v. *Lord*, 40 N. Y. 477 ; *Peck* v. *Sheldon*, 48 id. 365 ; *Fordham* v. *Smith*, 44 How. 472.) The provision for and payment of interest is fatal to the plaintiff's claim of a holding in a fiduciary capacity. (Webster's Dic., "Interest;" *Dry Dock B'k* v. *Am. L.*, 3 N. Y. 344 ; *Gaar* v. *L. B. Co.*, 11 Bush, 180 ; *Hubbard* v. *Callahan*, 42 Conn. 528 ; Bouvier's Law Dic., title "Interest;" *Bussing* v. *Thompson*, 15 How. Pr. 97–100 ; 6 Duer, 696 ; *McBurney* v. *Martin*, 6 Robt. 508 ; *Com. B'k* v. *Hughes*, 17 Wend. 100 ; *Stall* v. *Keen*, 8 How. Pr. 300–1 ; *Cotton* v. *Sharpstein*, 14 Wis. 233 ; *Robbins* v. *Falconer*, 43 Sup. Ct. 363 ; *Goodrich* v. *Dunbar*, 17 Barb. 644 ; *McBurney* v. *Martin*, 6 Robt. 502 ; *Stall* v. *King*, 8 How. Pr. 298.) Section 179 of the old Code, does not apply to a case where, by agree-

ment, an agent might use the principal's money as his own; he promising simply to pay the amount on demand, but only to a case where the agent is to return the identical money, or its traceable proceeds, to the principal. (*Robbins* v. *Falconer,* 43 Sup. Ct. 363; *Walter* v. *Bennett,* 16 N. Y. 250; *Connaughty* v. *Nichols,* 42 id. 83; *Greene* v. *Rosenstock,* 61 id. 583; *Vilmar* v. *Schell,* id. 564; *McBurney* v. *Martin,* 6 Robt. 502; *Goodrich* v. *Dunbar,* 17 Barb. 644; *Angus* v. *Duncomb,* 8 How. Pr. 14; *Morange* v. *Waldron,* 6 Hun, 529; *B. F. O. A.* v. *Woodman,* 1 Heub. 41; *Bussing* v. *Thompson,* 15 How. Pr. 97–100; *Sutton* v. *DeCamp,* 4 Abb. Pr. [N. S.] 483.) A general deposit of money subject to call does not constitute a fiduciary relation. (*Hersey* v. *Devereux,* 72 N. C. 462.) That was no evidence whatever of a conversion. (*Marvin* v. *Ellwood,* 11 Paige, 365; *Sims* v. *Brown,* 6 N. Y. S. C. 5.) There was no support of an action in tort. (*Greentree* v. *Rosenstock,* 61 N. Y. 583; *Connaughty* v. *Nichols,* 42 id. 83.) The omission or refusal to pay over moneys received by a factor or agent, or trustee, in the course of his agency or trust, will not lay the foundation for an action of trover. (Paley on Agency, § 79; *Weymouth* v. *Boyer,* 1 Ves. Jr. 425; *Walter* v. *Bennett,* 16 N. Y. 250; *Harris* v. *Schultz,* 40 Barb. 315; *De Graw* v. *Elmore,* 50 N. Y. 1; *Kimball* v. *Huntington,* 10 Wend. 680; Chitty on Bills, 41, 324, 334–428; *Russell* v. *Whipple,* 2 Cow. 536; 3 Kent's Comm. 74; 1 Parsons on Notes and Bills, 84, 24; Byles on Bills, 8; *Smith* v. *Allen,* 5 Day, 337; *Laqueer* v. *Prosser,* 1 Hill, 259; *Jacquin* v. *Warren,* 40 Ill. 459; *Brady* v. *Chandler,* 31 Mo. 28; *Sackett* v. *Spencer,* 29 Barb. 186; *President* v. *Hurtin,* 9 Johns. 217; Chitty on Bills, 428; *Allen* v. *Patterson,* 7 N. Y. 479; *United States* v. *State B'k of N. C.,* 6 Peters, 29; *Underhill* v. *Phillips,* 10 Hun, 592; *Payne* v. *Gardner,* 29 N. Y. 146–172; Story on Bailments, 99, 86, §§ 88, 84; Pothier, Traité de Depot, 82, 83; *Dunford* v. *Seghers,* 9 Martin, 484.) An affirmance founded on the defendant's liability *ex contractu,* should not suffer the plaintiff to issue execution against the defendant's person. (*Elwood* v. *Gardiner,* 45 N. Y. 351–354;

*Neftel* v. *Lightstone,* 77 id. 96; *Smith* v. *Knapp,* 30 id. 585; *Segelken* v. *Meyer,* 22 Hun, 6; Hill. on Trustees, § 518; Perry on Trusts, § 832; *In the Matter of H.,* 87 N. Y. 525; *Wolcott* v. *Hodge,* 81 Mass. 547; *Chapman* v. *Forsyth,* 2 How. 202; *Hayman* v. *Pond,* 7 Metc. 328.) The suit should have been brought by the general guardian of John Segelken. ( 2 R. S. 150, § 3, 151, § 10; *Seaton* v. *Davis,* 1 T. & C. 91; *Field* v. *Schieffelin,* 7 Johns. Ch. 150; *Tuttle* v. *Hearey,* 59 Barb. 334; *White* v. *Parker,* 8 id. 48; *Genet* v. *Tallmadge,* 1 Johns. Ch. 5; *Thomas* v. *Bennett,* 56 Barb. 197; *Chapman* v. *Tibbits,* 33 N. Y. 287; *Beecher* v. *Crouse,* 19 Wend. 306.)

*Christian G. Moritz* for respondent. The plaintiff had legal capacity to sue. (*Segelken* v. *Meyer,* 14 Hun, 593; Schouler on Domestic Relations, 462, note, 463; *Stratton's Case,* 1 Johns. 508; *Bradley* v. *Amidon,* 10 Paige, 235; *Porter* v. *Bleiler,* 17 Barb. 149; MacPherson on Infants, 354; *Hutchins* v. *Johns,* 82 Conn. 376; 26 Me. 76; 11 Ill. 24.) Where trust and confidence are reposed by one party in another, and such other accepts the confidence, etc., equity will convert him into a trustee whenever it is necessary to protect the interest of the confiding and do justice between them. (*Gen. Mut. Ins. Co.* v. *Benson,* 5 Duer, 168; 2 Bosw. 272; *Power* v. *Hathaway,* 43 Barb. 214; Tiffany and Bullard on Trustees, 480, 481, 482.)

Rapallo, J. John F. Segelken died in 1864 intestate, leaving a widow, Gesche Segelken, and five infant children, of whom the plaintiff is one. The widow, who was also mother of the children, was appointed administratrix of the estate of her husband, and general guardian of the children, by the surrogate of the county of New York, and the defendant acted as proctor and counsel for her as such administratrix and guardian, in the settlement of the estate, as well as in her other affairs, and continued so to act from a short time after the death of the intestate, until January, 1873. A settlement of her accounts as administratrix was had before the surrogate of the

county of New York, and on such accounting the defendant acted as her proctor and counsel. A final decree was entered by the surrogate on such accounting in May, 1870, whereby the amount in the hands of the administratrix for distribution was adjudged, and she was directed to pay the shares of her five minor children to herself as their general guardian.

After this decree, and in the year 1871, two of the children died intestate.

It was found by the court, on the trial of this action, that during the time the defendant was attorney, counsel and proctor of the widow and children of John F. Segelken, the defendant received, in a fiduciary capacity, moneys belonging to his estate, and to which said widow and children were legally entitled, and that on or about the 2d of January, 1873, he had an accounting with the widow, whereupon it was found that he was indebted to her as guardian of her children Gesche, John and Carsten in the sum of $1,500, and as next of kin of Adeline and Sophie (the deceased children) in the sum of $1,000, payable according to the decree of the surrogate, all of which moneys were received and retained by the defendant as the attorney, counsel and proctor of said widow and children.

On the trial a written acknowledgment, signed by the defendant, was put in evidence, which reads as follows: "Due Mrs. Gersche Segelken as guardian of her children Gesche, John and Carsten Segelken, the sum of $1,500, and as next of kin of Adeline and Sophie Maria the sum of $1,000, payable according to a decree of the surrogate of the county of New York, interest to be paid on the money to Mrs. Segelken July and January 1 of each and every year. Otto Meyer, January 2, 1873."

Gesche Segelken, the widow and guardian, died in 1876, and Andrew Koch was in 1877 appointed by the surrogate of Queens county general guardian of the plaintiff, who, being still an infant, now brings this action by said Andrew Koch as his guardian *ad litem*, duly appointed for that purpose, to recover the plaintiff's share of the before-mentioned fund in the hands of the defendant.

The objection is taken that the action is improperly brought by the infant in his own name, by his guardian *ad litem*, and that it should have been brought by the general guardian of the infant in his own name as such general guardian.

The question whether an action to recover money or personal property belonging to an infant should be brought by his general guardian where he has one, or by the infant himself through a next friend or guardian *ad litem*, has been discussed in several cases, but does not appear to have ever been decided by this court. The Revised Statutes prescribe that a testamentary guardian shall have the custody and management of the personal estate of the minor, and of the profits of his real estate, and may bring such actions in relation thereto as a guardian in socage might by law (2 R. S. 150, § 3), and that guardians appointed by surrogates have the same powers as testamentary guardians. (2 R. S. 151, § 10.)

As a guardian in socage has to do only with the real estate of the infant, it has been claimed in some cases that the Revised Statutes empower a general guardian to bring actions only in relation to such real estate and the rents and profits thereof; and as to such actions it has been held that they can be maintained by the general guardian only. (*Seaton* v. *Davis*, 1 T. & C. 91.)

In *Thomas* v. *Bennett* (56 Barb. 197), it was held in an elaborate opinion by FOSTER, J., that a general guardian might maintain an action in his own name to compel the defendant to pay over pension moneys belonging to the infant, which the defendant had collected under a contract between him and the general guardian for the benefit of the infant. This decision is placed on the statute (2 R. S. 151, §§ 3 and 10), which the learned judge construes as empowering the general guardian to bring actions in relation not merely to the rents and profits of the real estate of the infant, but also in relation to his personal estate, and on the further ground that the guardian could maintain the action as the trustee of an express trust.

But in *Bradley* v. *Amidon* (10 Paige, 235, 239), the chancellor decided that a general guardian appointed by a surrogate

was not authorized to file a bill in his own name to obtain possession of personal property of his infant wards, but must file it in the name of the infants as their next friend. That a decree made in the suit brought by the general guardian would not protect the defendants from further litigation even with the infants themselves, and that the bill should be dismissed on the ground that it was filed by a sole complainant who had no interest in the subject-matter of the suit.

Notwithstanding the appointment of a general guardian, the title to the property is in the infant. The statute gives to the guardian the custody and management of the personal estate, but the beneficial interest is in the infant.

The Code of Civil Procedure (§ 468) contains a provision similar to that contained in the Revised Statutes authorizing infants to maintain actions by guardian *ad litem*, and it recognizes this right in cases where the infant has a general guardian, for it authorizes the general guardian to apply for the appointment of a guardian *ad litem*, and section 476 shows that it is contemplated that the general guardian may himself be appointed guardian *ad litem*, and sue as such in the name of the infant. By section 1686 of the Code of 1880, it is provided that real actions may be brought by infants, and that section 468 shall apply to such actions, and the note to section 1686 states that its object is to abolish the rule laid down in *Cagger* v. *Lansing* (64 N. Y. 417), and *Seaton* v. *Davis* (*supra*), and to assimilate ejectment and other real actions in this respect to the general rules established by the Code.

We think that the action was well brought in the name of the infant by his guardian *ad litem*, and that a good cause of action in the plaintiff was shown for the $500 which was by the instrument of January 2, 1873, admitted to be due from the defendant to plaintiff's mother as his general guardian. This was equivalent to an admission that the money belonged to the plaintiff, and had been held by his general guardian in trust for him, and even if not originally collected and received by the defendant for the plaintiff, but paid over by the guardian to the defendant as he contends, it was received by him

with knowledge that it was a trust fund. If loaned, it was improperly placed in his hands without security, and he received it impressed with the same trust as that upon which the guardian had held it, and the share of the plaintiff in the fund having been ascertained and agreed upon, he could follow the fund and maintain an action for his share.

But in addition to the $500 to which the plaintiff became entitled as next of kin of his father, he has recovered $250 for his share of the $1,000 which belonged to his two sisters who died after his father, and after the decree of the surrogate settling the accounts of the administratrix. This $1,000 is stated in the written acknowledgment to be due to Mrs. Segelken as next of kin of the two deceased children. It was in fact due to her and the three surviving children as such next of kin, and in this action it was so adjudged. It was admitted, however, by the defendant that it was due to the next of kin of the deceased children, and Mrs. Segelken in her own right and as guardian of the three surviving children was ultimately entitled to it. But it is contended that they had no right of action directly against the defendant for that money, and that only an administrator duly appointed to administer upon the estates of the two deceased children could legally maintain an action for it. The appellant is technically correct in this position. As next of kin simply, the plaintiff could not sue to recover personal property of his deceased sisters. *Woodin* v. *Bagley* (13 Wend. 453) and *Beecher* v. *Crouse* (19 id. 306) are directly in point on that question. But nevertheless a recovery by next of kin of a deceased person, of personal property left by the deceased, without the intervention of an administrator, has, under special circumstances, been permitted. In *Hyde* v. *Stone* (7 Wend. 354), the plaintiff after becoming of age brought an action of trover to recover the value of certain personal property of which his father had died possessed. The plaintiff was the only child. After his father's death the property went into the possession of his mother. She married again and then died, and her second husband took possession. The general guardian of the plaintiff then demanded the prop-

erty of his step-father, who admitted his right. The value of the property was estimated, and the defendant offered to the guardian to pay it if he would give a release. The son when he became of age sued his step-father in trover for the value of the property converted by him. The court said that it could not be necessary that the plaintiff should go through the form of taking out letters of administration before he could get possession of such personal estate ; that if administration had been granted to any other person, it was in the power of the defendant to have shown it, but that the defendant, having admitted the right of the plaintiff, ought not to object that he was responsible to the administrator of the estate of the plaintiff's father, and not to the plaintiff himself, who was the only person beneficially interested in that estate. This case is referred to in *Woodin* v. *Bagley* and *Beecher* v. *Crouse* (*supra*), and is there stated to rest on its own peculiar circumstances, and on the admission by the defendant of the plaintiff's right ; but no disapproval of the decision is expressed. In the present case the deceased sisters of the plaintiffs were infants when they died. It is not to be presumed that they had any creditors , at the time of the commencement of the action, upwards of six years had elapsed since their death. It did not appear that their estates had ever been administered upon, and the defendant had admitted in his written acknowledgment that he was indebted to their next of kin for the $1,000, and he promised to pay it according to the decree of the surrogate, by which decree the rest of the fund was payable to the mother as general guardian of her children. It was also testified to on the trial by Mr. Van Wyck, the attorney for the plaintiff in this action, that he demanded of the defendant the plaintiff's share of the money in his hands, and the defendant promised to pay it as soon as Mr. Koch should take out letters of guardianship of the plaintiff ; that when they were obtained there was another excuse, but that the defendant did not refuse to pay on the ground that no administrator had been appointed for the deceased children ; that if that objection had been made, witness would have had an administrator appointed immediately.

We think the circumstances of this case bring it fairly within the case of *Hyde* v. *Stone*, and that taking that case as a precedent, the recovery can be sustained.

The defendant claimed at the trial that two items, one of $400, loaned to Mrs. Segelken in 1869, and one of $160, due him in the same year for professional services, had been by mistake left out of the accounting of January 2, 1873, when the due bill for $2,500 was given. Some testimony of the defendant bearing on these items was stricken out by the court on the ground that it related to personal transactions with Mrs. Segelken, who was deceased. Whatever question there may be as to the correctness of this ruling, we cannot consider it here, as no exception appears to have been taken at the trial. The refusal of the judge to allow the items is excepted to, but it is obvious that they were not proved by uncontroverted evidence.

The point most strenuously urged upon the argument was, that the cause of action alleged in the complaint was receiving money in a fiduciary capacity and converting it to defendant's own use, and that, therefore, the action was for a tort. But that even if it should be held to be an action *ex contractu*, the allegation that the money for which the defendant is sued was received by him in a fiduciary capacity, was essential as characterizing the nature of the action, and a judgment against the defendant subjected him to an execution against the person. That consequently, whether the action was in tort or *ex contractu*, the allegation that the money was received in a fiduciary capacity was essential, and if not established, the plaintiff was not entitled to recover.

The defendant claims that the evidence not only fails to prove this allegation, but that it was disproved, and that the finding of the fact by the court is erroneous, being not only unsupported by the evidence, but contrary to the evidence, and consequently the complaint should have been dismissed.

We have examined the complaint and are satisfied that it is not framed in tort. It alleges that the defendant was employed as attorney and counsel of Mrs. Segelken, and her children, and while so employed, received in a fiduciary capacity moneys

belonging to the estate of Frederick Segelken, deceased, and to which his widow and children were entitled. That on or about the 2d of January, 1872, he had an accounting with the widow, whereupon it was found that he was indebted to her as guardian and next of kin as before stated, and that all of said moneys were received and retained by the defendant as the attorney, counsel and proctor of said widow and children ; that the plaintiff's share of said money was $750 ; that said money so due him was received in the fiduciary capacity aforesaid and was frequently demanded from the defendant, but that he had neglected, and still neglected and refused to pay the same to the plaintiff, and had converted the same to his own use.

These allegations disclose merely a cause of action for money had and received by an agent or attorney in a fiduciary capacity which were the subject of an accounting, and that he had neglected and refused to pay over on demand the balance found due. This is clearly a cause of action *ex contractu*. An agent or a person acting in a fiduciary capacity is not subject to an action of tort, for mere acts of omission, such as not paying over money due, but only for acts of misfeasance, and in an action against an agent or attorney for not accounting, or not paying over a balance found due on an accounting, the plaintiff does not by adding to the allegation that the defendant has refused to pay over the money due, an assertion that he has converted it to his own use, convert the action into one for a tort. The addition is mere surplusage under the circumstances. It is a mere deduction from the facts stated, and in the connection in which it is used is not traversable. (*Greentree* v. *Rosenstock*, 61 N. Y. 583 ; *Conaughty* v. *Nichols*, 42 id. 83.) The action must, therefore, be treated as in form *ex contractu*. Treating it in that form, proof that the defendant has received money to which the plaintiff is equitably entitled, is sufficient to sustain the action, and the allegation that the defendant received the money in a fiduciary capacity is not essential to entitle the plaintiff to recover and need not be proved, unless the effect of a judgment for the plaintiff, where the complaint contains such an allegation, would be to subject

the defendant to an execution against his person, even if no order of arrest had been granted during the pendency of the action.

The solution of this question requires a critical examination of some provisions of the Code of Civil Procedure, as to which there is a difference of opinion.

This Code provides (§ 1487) that an execution against the person may issue :

*First.* Where the plaintiff's right to arrest the defendant depends upon *the nature of the action:*

*Second.* In any other case where an order of arrest has been granted and executed and not vacated.

Section 549, as it stood in 1877, when this action was commenced, enumerated the cases in which the right to arrest depended upom the nature of the action. In those cases the complaint necessarily alleged the facts showing such right of arrest, for they were identical with the facts constituting the cause of action, and must be proved to entitle the plaintiff to recover. By the amendment of 1879, the fourth subdivision of section 549 was added, which authorizes an arrest in an action on contract, where the defendant was guilty of fraud in incurring the debt or liability sued upon. But in reference to that particular class of cases, special provision is made that the fraud must be alleged in the complaint and proved upon the trial, or the plaintiff cannot recover.

Section 550 enumerates the cases in which the right to arrest depends upon matters extrinsic the cause of action, and in which no execution against the person can issue, unless an order of arrest has been obtained and executed before judgment. These extrinsic matters need not be alleged in the complaint, and if alleged are immaterial to the right of action and need not be proved upon the trial. The confusion which exists upon this point has arisen from the circumstance that in the enumeration of cases in this section, some are included which are also substantially included in section 549, and are unnecessarily repeated in section 550. This difficulty is found in subdivision 3 of section 550. All the other subdivisions of that section re-

late clearly to extrinsic matters exclusively, but subdivision 3 is rather mixed. Its language is:

"In an action *to recover for money received,* or *to recover property,* or *damages for the conversion or misapplication of property,* where the money was received, or the property was embezzled, or fraudulently misapplied, by a public officer, or by an attorney, solicitor or counselor, or by an officer or agent of a corporation or banking association, in the course of his employment, or by a factor, agent, broker or other person in a fiduciary capacity. But this subdivision does not apply to an action to recover a chattel."

By analyzing this section it is seen that it applies, *first,* to an action *for money received,* where the money was received by a public officer, or by an attorney, solicitor or counselor, or an officer or agent of a corporation or banking association, in the course of his employment, or by a factor, agent, broker or other person in a fiduciary capacity. In these cases it is apparent that the action is *ex contractu,* for money had and received to the use of the plaintiff, and that the fact that it was so received by the defendant in a fiduciary capacity is an extrinsic fact not necessary to be alleged or proved, to entitle the plaintiff to recover, and that if he desires to arrest the defendant on final process, he must obtain an order of arrest before judgment. On the other hand, subdivision 3 includes an action to recover *damages for the conversion or misappropriation of property,* where the property was embezzled or fraudulently misapplied by any of the specified persons, or by any person in a fiduciary capacity. It is difficult to understand for what reason the fact that the person, against whom damages are sought to be recovered for the conversion of property, was acting in a fiduciary capacity, should be required to be added to the charge of conversion to entitle the plaintiff to an order of arrest. But, notwithstanding this peculiar enactment, it can hardly be doubted that an action for damages for conversion by such a person would, under the provisions of section 549, be of such a nature as to entitle the plaintiff, if successful, to an execution against the person without any previous order of

arrest, and that it would be necessary to prove the conversion in order to maintain the action, though it might not be necessary to allege, in the complaint, or to prove, the fiduciary capacity, which would be a fact extrinsic the cause of action, and that a failure to prove that allegation, if made, would not defeat the action, if the conversion and the plaintiff's right to damages were proved. A third class of cases are included in subdivision 3, viz.: actions to recover property, where the property was embezzled or fraudulently misapplied by a person in a fiduciary capacity. The same remarks apply to this class of cases. A cause of action to recover specific property might be set forth in the complaint, without disclosing a cause of action in its nature bailable, and in that case, an order of arrest must be obtained on affidavits showing the extrinsic facts essential to the right of arrest. In all the cases specified in section 550, the allegation of the capacity in which the defendant received the money or obtained the property, is immaterial to the right of action. That right would be the same, whatever the capacity in which the defendant acted. The fact affects simply the right of *arrest*, and is, therefore, a fact extrinsic the cause of action, which need not be alleged in the complaint, and, if alleged, need not be proved.

Subdivision 3 of section 550 was not changed by the amendment of 1879, but was in force as it now stands, when this action was brought.

Section 557 requires that to obtain an order of arrest under section 549, it must be made to appear by affidavit that a sufficient *cause of action* exists against the defendant *as prescribed in that section.* That is the only requirement, because the cause of action and the cause of arrest are identical (the only exception being the case of fraud which is specifically provided for by subdivision 4). But such is not the case in respect to section 550; the application for an order under that section must show, not only a sufficient *right of action,* as prescribed in that section, but also *the other matters extrinsic the cause of action* specified in that section. And section 558 requires that the complaint set forth a sufficient *cause of action,* as required

by section 557. There is no requirement that any of the extrinsic facts be set forth in the complaint, except, as before stated, in the single instance of fraud in contracting the liability.

It cannot be argued that the requirement that the complaint set forth a sufficient *cause of action*, as required by section 557, has any reference to the fiduciary capacity in which the defendant was acting when he incurred the liability. Section 550 defines several classes of actions, and the requirement is that the complaint show a right in the plaintiff to maintain an action belonging to one of those classes. Subdivision 1 refers to *an action for the recovery of a chattel*, analogous to the common-law action of replevin. Subdivision 2 refers to *an action on contract*, express or implied. Subdivision 4, to *an action for specific performance*. Subdivision 3 refers, *first*, to an action *for money had and received; secondly*, to an action *for the recovery of property;* and *thirdly*, to an action *for damages for the conversion of property*. In each of these subdivisions the *nature of the action* is first stated, and then, after the word "*where*," the extrinsic facts which subject the defendant to arrest are set forth. To sustain an order of arrest under either of these subdivisions, the *complaint* must state facts sufficient to show *a cause of action* of one of the classes specified in the subdivision under which the plaintiff proceeds. If a plaintiff, obtaining an order of arrest, under subdivision 3, should set forth in his complaint only a cause of action for money lent, or on a promissory note, or for goods sold and delivered, or the like, the complaint would be so inconsistent with the grounds of arrest that the order ought to be vacated. We do not think that any thing further was intended than that the complaint should show that the action is one in which, on proof of the necessary extrinsic facts, an order of arrest may properly be granted. The object was not the same as that of subdivision 4 of section 549, viz.: To allow the defendant the benefit of a trial upon the allegations of the affidavits upon which his arrest was ordered, and to make the plaintiff's recovery depend upon his maintaining those allegations. If

such had been the intention, explicit and unambiguous language, similar to that used in subdivision 4 of section 549, would have been adopted, and we should not have been left to spell out the intention by giving to the language used a more comprehensive meaning than that which its literal interpretation admits.

There is not the same reason for requiring the grounds of arrest to be tried in the action, where the allegation is of a fiduciary capacity, as where it charges fraud. A charge of fraud is essentially a question of fact, proper to be determined by a jury, while the question of fiduciary capacity is ordinarily one of law which the court is more competent to dispose of. It might well, therefore, be left as it was before the amendment of 1879, to be determined on a motion to vacate the order of arrest. (See *Republic of Mexico* v. *DeArangoiz,* 5 Duer, 634; *Wood* v. *Henry,* 40 N. Y. 124.) As to the grounds of arrest specified in subdivisions 1, 2 and 4, it is manifest that they have no proper place in the complaint.

It is suggested that the amendment made in 1879 to section 558 shows that it was intended to give to that section a broader meaning than that which I have attributed to it. The section, as it stood in 1877, provided that the order of arrest should be vacated if the complaint, when served, showed that the cause of action *was not* one of those specified in sections 549 and 550. The amendment of 1879 changed this language so as to require the order to be vacated if the complaint *should fail to show* a *sufficient cause of action* as prescribed by those sections. I do not think that this amendment was intended to make any substantial change; certainly not to require that any thing extrinsic the *cause of action* should be set forth. A very strong argument to the contrary is to be found in the circumstances that while the amendatory act of 1879 provides that the amendment of section 549 (being the amendment requiring that when fraud is made the ground of arrest it must be alleged in the complaint) shall not apply to existing suits (Laws of 1879, chap. 542, § 2), there is no such saving clause in regard to the amendment of sections 557 and 558. If this last amendment was intended to put the allegation of fiduciary

capacity on the same footing as the allegation of fraud, there was the same reason for saving existing suits from the effect of the amendment as there was in the case of the amendment to section 549. The omission of such a saving clause clearly shows that no important change was intended.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.