THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, *v.* FRANK A. CIVILLE, APPELLANT.

*Grand larceny — when a failure of an agent to pay over money collected constitutes that offense, as defined in section 528 of the Penal Code.*

Upon the trial of the defendant upon an indictment for having feloniously appropriated the sum of seventy-five dollars in his possession, custody and control as the agent, clerk or servant of the prosecuting witness, it appeared

---

* 105 New York 123.—[REP.

that he had been employed by her in collecting the rent of fourteen houses, situated in the city of New York, for which he was to receive certain fixed commissions; that on August 11, 1885, he received the sum of seventy-five dollars for the rent of one of the houses, and deposited the same in an account kept by him in his name as trustee; that he never paid the said seventy-five dollars to the prosecuting witness, nor accounted to her therefor. It also appeared by the evidence that it was the custom for the defendant to pay to the witness, in the early part of each month, the rents received by him during the preceding month, after deducting his commissions and the expenses of repairs and management; that the specific moneys received by him from the tenants were not paid over to her, but a check was given for the final monthly balance of the account.

*Held*, that, as it did not appear that the defendant had expended this sum of money either for repairs or in the management of the property, or for his commissions, or in any other manner for the benefit of the owner of the property, he was guilty of the offense of grand larceny, as that is defined in section 528 of the Penal Code. (BRADY, J., dissenting.)

That it was not necessary, to authorize his conviction of that offense, to prove that he intended to appropriate this money to his own use, or to the use of any other person, at the time when it was received by him, for the intent so to use it at any time while it remained in his custody, possession or control as a bailee, servant, attorney, agent, clerk or trustee, followed by that use of it, created a crime within this section of the statute.

APPEAL from a judgment of the Court of General Sessions of the county of New York, convicting the defendant of the crime of larceny in the second degree.

*W. C. Beecher*, for the appellant.

*McKenzie Semple*, for the respondent.

DANIELS, J :

The defendant was charged in the indictment with having feloniously appropriated the sum of seventy-five dollars, in his possession, custody and control as the agent, clerk or servant of the prosecuting witness. It was made to appear by the evidence that he had been employed by her in collecting the rent of fourteen different houses, situated in the city of New York, for which he was to receive a commission, on the corner house, of two and a half per cent, for the flats three per cent and for the other dwellings five per cent on the amount of rent collected. For the rent of the house known as 2042 Madison avenue he received the sum of seventy five dollars on the 11th of August, 1885, which he failed to account for or pay over to

the complaining witness, who was the owner of the property. It was charged that he had feloniously appropriated that sum of money, and the verdict of the jury sustains the truth of the charge. Various objections and exceptions were taken during the progress of the trial, which were disallowed by the court, and it has been urged on behalf of the defendant that many of the rulings made in this manner were erroneous as well as prejudicial to the defendant.

It appeared by the evidence of the complaining witness, that the course of business between herself and the defendant was that he should pay over in the early part of the month the rents received by him during the preceding month, after deducting his commissions and the expenses of repairs and management. The specific money received by him from the tenants was not paid over to her, but a check giving the final monthly balance of the account between the defendant and herself. This was always the way in which the business had been arranged and the rents paid over to the complaining witness. Upon this mode of dealing it was contended on behalf of the defendant that he could not be convicted of the offense charged in the indictment, for the misappropriation of this particular sum of seventy-five dollars. But as he did not appear to have expended this sum of money, either for repairs or in the management of the property or for his commissions, or in any other manner for the benefit of the owner of the property, this position cannot be deemed to have been well taken, for the money still remained in his possession, custody and control, after the deposit and credit of the check in his account, the same as the check itself was previous to that being done. The deposit and credit of the check to himself in his account did not convert the fund into the property of the defendant, but it was still money or property in the custody or control of the defendant, for the complaining witness, as its owner and within the provisions of section 528 of the Penal Code under which the defendant was convicted. The cases quite prominently relied upon by the counsel for the defendant of *Vilmar* v. *Schall* (61 N. Y., 564); *Segelken* v. *Meyer* (94 id., 473), and *Donovan* v. *Cornell* (24 Weekly Dig., 351), presented this section of the Penal Code for construction, but they were disposed of chiefly as matters of pleading, and are not applicable, therefore, to this case. The latter decision was made on the authority of *Morris* v. *Talcott* (96 N. Y., 100), which depended

upon entirely different considerations and principles. That was likewise the case of *People* v. *Cruger* (102 N. Y., 510), where, although the charge was larceny, it in no manner depended upon the provisions of this section of the Code which are applicable to the charge made against the defendant.

Before the time when the check was deposited the defendant had changed his deposit account to himself as trustee. This was done in the fall of 1884, and continued to the time when this check was deposited in a deposit account in favor of F. A. Civille, as trustee. This was not only an acknowledgment but a preservation of the fact that the check received by him came into his possession, as the other proof established the fact to be, as the agent of the complaining witness, and that it was made to preserve that character in the bank account of which it constituted a part. And that maintained the defendant's relation to this sum of money to be that of the agent, trustee or bailee of the owner of the property. (*Baker* v. *National Ex. Bank.*, 16 Abb. N. C., 458.) He still continued the custodian of the money in a fiduciary capacity for the benefit of the owner of the property, and he was not relieved from responsibility on account of it, for the reason that it might have been appropriated to the payment of his commissions, or to defray the expenses of repairing and managing the property, as long as there was no evidence in the case establishing the fact that it had been so used.

Neither was it necessary for the inculpation of the defendant that he should have intended to appropriate this money to his own use or to the use of any other person at the time when it was received by him, for the intent so to use it at any time while it remained in his custody, possession or control, as a bailee, servant, attorney, agent, clerk or trustee, followed by that use of it, created a crime within this section of the statute. It was enacted in much broader language than was the provision contained in the Revised Statutes defining the crime of embezzlement, for under that statute, as first amended, it was only the clerk or servant of a private person or of a copartnership, or an officer, agent, clerk or servant of a municipal or other corporation, or joint stock company or association, or a director, trustee or manager who was declared to be guilty of embezzlement for converting to his own use, without the

consent of his master or employer, the funds or property received by him in one of these capacities. (3 R. S. [6th ed.], 952, § 73.) And this section was construed by the courts quite strictly in its administration and enforcement. And that circumstance, together with the frequent defalcations of persons employed as agents, trustees and officers of public and private corporations induced the enactment of additional legislation to meet and punish this increasing class of cases. Accordingly, by chapter 207 of the Laws of 1874, the first enactment contained in the Revised Statutes was enlarged in the manner already stated, and by chapter 688 of the Laws of 1873 any person appointed and acting as the agent of an insurance company was brought within the same restraints, and by chapter 208 of the Laws of 1877 the criminal liability was further extended to include an executor, administrator, trustee or guardian appointed by any will, deed or other written instrument, or by the judgment or order of any court or judicial officer in this State. And it was evidently the purpose of the Penal Code to include the substance and effect of these various enactments in the section under which the defendant was indicted and convicted, for that has declared that any person who, with the intent to deprive or defraud the true owner of his property, or of the use and benefit thereof, or to appropriate the same to the use of the taker or of any other person, having in his possession, custody or control, as bailee, servant, attorney, agent, clerk, trustee or officer of any person, association or corporation, or as a public officer, or as a person authorized by agreement or by competent authority to hold or take such possession, custody or control, any money, property, evidence of debt or contract, article of value of any nature, or thing in action or possession, appropriates the same to his own use or that of any other person other than the true owner or person entitled to the benefit thereof, steals such property, and is guilty of larceny. This portion of the section has been very broadly enacted, and clearly included the defendant, for he was the agent and bailee or trustee of the complaining witness, receiving and having in his possession this check, as well as the proceeds thereof, for her benefit, and by their misappropriation, as the jury found that fact under the evidence, he was guilty of the crime mentioned in the statute.

The cases relied upon in support of the objections taken at the

trial will not sustain the defendant's appeal. In that of *Commissioners* v. *Libbey* (11 Metc., 64), the court held no more than that the statute of that State did not include an auctioneer or commission merchant, as an agent or servant, for in the course of his business he had the right to mingle the proceeds received with his own, and pay over any like amount in discharge of his liability. The same construction was given to the act in *Commissioners* v. *Stearns* (2 Metc., 343), and it was further held that a person collecting bills for the proprietor of a newspaper was not such an agent or servant as the statute designed should be punished for embezzlement for failing to pay over the moneys collected by him. But the facts of this latter case would probably be sufficient to bring it within so much of this section of the Penal Code as has been mentioned if the accountability had arisen out of like transactions in this State, for the person charged did, in fact, collect the bills as the agent of the proprietor of the newspaper; while in *Commissioners* v. *Foster* (107 Mass., 221), the defendant was relieved solely on the ground that he was not an agent. The English authorities are not entirely harmonious in their construction of their acts relating to the crime of embezzlement. In *Regina* v. *Goodbody* (8 Car. & Payne, 665), the defendant was absolved for the reason that he was not a clerk or servant but an agent, which, to that extent, renders the case an authority against the defendant. In *Rex.* v. *Carr* (1 British Crown Cases, 198), the defendant was employed in selling and taking orders for goods for different employers and receiving moneys, and it was held that he was properly convicted for their misappropriation as a clerk or servant of the employer whose money was so used. The case of *Queen* v. *May* (30 L. J., N. S. Magistrate Cases, 81) seems, however, to be adverse to this ruling. But that of *Queen* v. *Tite* (Id., 142), followed and further enforced it. And so has the cases of *Regina* v. *Turner* (11 Cox C. C., 551); *Regina* v. *Bailey* (12 id., 56), and these cases certainly are authorities justifying such a construction and application of this section of the Penal Code as will include that of the defendant. In *State* v. *Kent* (22 Minn., 41), the defendant was a collector of pew rents, and it was held that, as he was entitled to commissions from the amounts collected, he was not guilty under the statute for misappropriating the entire money received as part of it was his

own property. But there seems to be no good reason for this discrimination, for as to the residue of the money received over the commissions, the person receiving it has it in his possession, custody or control, as the agent, bailee or trustee of his employer, and that has been so considered in the English cases which have not relieved the accused because of the circumstance that he was entitled to retain his commissions out of the moneys collected by him. But this decision is not applicable to this case for the further reason that it did not appear by the evidence that the defendant had used any portion of the money represented by or derived from the check, for the payment of the commissions he was entitled to retain. It appeared, on the contrary, by his own testimony, that he had probably used the money in the bank for the payment of the debts owing by him to other creditors. Some stress was made in his favor on the fact that he had become involved by the failure of Mr. Dean, his brother-in-law. But that, in truth, had no relevancy to the case. For it appeared by the testimony of the defendant that no money of the complaining witness went to Dean during the year 1885, and his transactions with her all took place after the failure of Dean. And no part of her money was loaned by the defendant to him. An effort was also made to excuse the defendant under his power to apply moneys received by him for the repair and management of the property, and it did appear, from his testimony, that $456.56 of the moneys received for rents in the month of August had been used in this manner, but it was not shown by any statement or account produced that this particular check, or any part of it, went in that direction.

The defendant also, at the request of the owner of the property, looked after the buildings as he daily passed them to see that the work was properly performed in their construction and finish, and for that it was insisted that he was entitled to a compensation against the prosecuting witness. Her testimony was to the effect that he bestowed this service at his own instance gratuitously, anticipating that the buildings would be in his charge as agent after they were completed. No account or claim for any compensation for this service was ever made out or presented by him to her. Neither was it made to appear that he had retained this money for either of these objects. On the contrary, his testimony, in general terms,

was that " there was no part of this money which I did not devote
to my creditors, and my balance stands now about three dollars."
At the same time, in the submission of the case to the jury, they
were directed to take these different subjects into consideration ;
that the defendant was entitled to use the complainant's money
in the course of his agency for making necessary repairs, and
the claim advanced that he was entitled to compensation for such
services; and the jury were directed finally that if he had used the
money " by the authority and consent of this complainant, why
then, of course, he has committed no crime." And they were
directed only to convict him in the event that they should become
satisfied from the evidence he had feloniously appropriated this
sum of money to his own use.  It was further added that " if by
some misfortune over which he had no control, and not being actu-
ated by any unlawful intent, the money of the complainant, which
he as her agent received, was lost, and the defendant was thereby
unable to pay it to the complainant when he was called upon to do
so, he is guilty of no criminal offense." These directions were as
favorable to the defendant as he had a right to expect them to be
under the circumstances. The court was requested, also, to give
certain directions to the jury as to the effect of the evidence of
good character, but as that had already been done a repetition of the
observations was not deemed to be, as it certainly was not, necessary.
The case is an unfortunate one for the defendant, who, however,
had no right whatever to misappropriate the money received and
held by him in the course of his employment. Defalcations of this
and other descriptions have become appallingly numerous, both in
their frequency and amounts. They exhibit startling infirmities
of human character that can only be checked or avoided by the
unswerving application and execution of the law; and where no
substantial error appears to have intervened in the course of the
trial the court, as a matter of sympathy for an unfortunate defend
ant, cannot intervene for his relief.

There were some exceptions taken to the exclusion of evidence
upon the trial ; but as the testimony excluded was of no material
importance, and could have been of no substantial benefit to the
defendant, the rulings made on this subject do not require to be
specially considered. The question which the witness McLain was

not permitted to answer as to whether he had advised the defendant to visit Mr. Dean in Canada, evidently by way of explanation of the fact that he had gone there, was afterwards answered by this witness, who stated that he did advise him to go to Canada to see his brother-in-law at that time. If the ruling in the first instance was not correct, this answer had the effect of removing the objection and exception from the case.

The judgment from which the appeal has been taken should be affirmed.

VAN BRUNT, P. J., concurred.

BRADY, J. (dissenting):

The appropriation of money held by an agent or trustee to his own use, is not a larceny under the provisions of section 528 of the Penal Code, unless it be done with the intent to deprive or defraud the owner of his property or the use or benefit thereof. The mere appropriation or use of the money may be an innocent exercise of dominion if the intention exist to pay or restore it. It is the *animus furandi* which creates the crime — the intention to make an absolute appropriation as contradistinguished from a temporary use without any design to defraud the owner or to deprive him of his property.

The intent — the *quo animo* is the ruling element of crime and the section mentioned recognizes it in the language employed: "A person who with intent to deprive," etc. If the Legislature meant that the mere use of money, not his own, by an agent, although not with evil intent, constituted larceny, they would not have used the language employed and referred to

The defendant was therefore entitled to the following charges: That if the jury believe that the defendant received the seventy-five dollars, intending to account for it as usual and subsequently failed to pay it over, because of hopeless insolvency, there would be no criminal intent. That if the defendant collected the rents for his clients and deposited them with other funds in his bank, intending in good faith to account for the same at the end of each month and fails to do so through inability, he is not guilty of larceny.

He was also entitled to the following: That in a case of this nature evidence of good character becomes a very important element, and in close cases may very properly create that reasonable doubt

which would entitle the defendant to an acquittal. The learned recorder said in answer to this as to others that he would not charge other than as charged. His observations about the evidence of good character were as follows: The defendant has introduced evidence tending to show that he has heretofore borne a good character; five or six witnesses have testified to that effect. Evidence of good character is to be considered by you with all other evidence in the case, and you are to give it just such weight as you think it justly and properly entitled to and no more. In a doubtful case, in my judgment, evidence of good character is entitled to very great weight; and in a case where the reasonable doubt, to which I will call your attention, shortly, would not otherwise exist, where evidence of good character is introduced it will sometimes create in the minds of a jury that reasonable doubt, to the benefit of which a person charged with the commission of crime is entitled to. But in weighing evidence of good character and considering it, the jury should also take into consideration the fact that men of highest character have been known to commit the very worst criminal offenses.

This was not a correct expression either of the law or the facts of the case. What evidence was there that men of the highest character had been known to commit the very worst criminal offenses; and why, therefore, should the jury weave that into their deliberations? What authority exists for any such ruling? If the word "reputation" had been used it would have been more felicitous, although equally erroneous as the statement of a legal rule. The defendant was entitled to an absolute charge of the value of good character, wholly separate and apart from any other man's reputation or evil deeds. The effect of the charge was to deprive the defendant of all benefit, inasmuch as it intimated, however unintentional, if it did not declare, that men of good character might, nevertheless, commit the worst of crimes, and the defendant was one of the men. In this case the question of character was important, and the defendant should not have been deprived of the full extent of the rule, which was even broader than claimed by the defendant's counsel.

I think that injustice has been done in this case, and that the judgment should be reversed and a new trial ordered.

Judgment affirmed.