NATIONAL LIFE ASS'N OF HARTFORD, CONN., v. THOMPSON.

(Supreme Court, Appellate Division, Second Department.   March 7, 1899.)

1. CONVERSION BY AGENT—WHAT CONSTITUTES—DEMAND.
   The mere fact that a check given by an agent for money collected for the principal is not paid when presented, and that the teller pronounces it not good, does not show a conversion by the agent, no demand having been made on him.

2. SAME—EVIDENCE.
   On an issue of conversion of a fund for which no demand was made, defendant may testify to conversations with an officer of plaintiff which tend to explain his attitude towards plaintiff in respect to his failure to turn over the fund, where such officer has testified to other conversations with defendant on the same subject.

3. EVIDENCE—ADMISSIONS—CONTRADICTION—EXPLANATION.
   When a party's admissions have been introduced against him, he may explain them, or deny that he made them.

Appeal from trial term, New York county.

Action by the National Life Association of Hartford, Conn., against Francis A. Thompson.   From a judgment entered on a verdict in favor of plaintiff, directed by the court, and from an order denying a new trial, defendant appeals.   Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Louis Cohen, for appellant.

E. T. Lovatt, for respondent.

WILLARD BARTLETT, J.   In this action the defendant has been held liable for the conversion of $1,762.75, which he collected as the New York agent of the plaintiff corporation.   His defense consisted of a general denial and an averment that on or about the 26th day of March, 1896, for a valuable consideration, the plaintiff had extended the time for the payment of any indebtedness then or thereafter to become due to it from the defendant to the 30th day of September, 1896, a date subsequent to the time of the commencement of the action. At the conclusion of the evidence on both sides the learned trial judge instructed the jury that the action was a suit for conversion in which no defense had been made out, and directed them to find a verdict in favor of the plaintiff for the amount already mentioned, together with interest.   The particular claim which gave rise to this action grew out of certain collections made by the defendant as the plaintiff's agent in New York for the week ending March 21, 1896. Out of these collections, according to the terms of his contract with the plaintiff corporation, the defendant was entitled to retain certain commissions.   He deducted these, and sent the plaintiff his check for the balance of $1,762.75.   This check was not paid upon presentation at the bank on which it was drawn, and thereupon the plaintiff began proceedings by attachment against the defendant.   There was no proof that any demand had ever been made upon the defendant for the moneys represented by the check, and the simple fact that it was not paid when presented at the bank, and was pronounced not good by the teller, who refused payment, did not suffice to establish a case of

56 N.Y.S.—26

conversion against the defendant. "An agent or a person acting in a fiduciary capacity is not subject to an action of tort for mere acts of omission,—such as not paying over money due,—but only for acts of misfeasance; and in an action against an agent or attorney for not accounting, or not paying over a balance found due on an accounting, the plaintiff does not, by adding to the allegation that the defendant has refused to pay over the money due an assertion that he has converted it to his own use, convert the action into one for a tort." Segelken v. Meyer, 94 N. Y. 473. There was, however, some other evidence in the case from which it might be inferred that the defendant had actually converted this money; that is to say, had either spent it for his own purposes, or asserted such a dominion over it as to amount to a denial of the plaintiff's right thereto. Albert Freeman, the director of agencies of the plaintiff corporation, testified to a conversation with the defendant, after his check had been dishonored and the attachment proceedings had been begun, in which the witness said he told the defendant plainly that he had used the money belonging to the company, which, under his contract, he was to account for every week. "He told me many times," said Freeman, "that he had done wrong. He came over to me, and begged me I should not push the case against him. * * * He said he was very sorry that he was not in a position to pay the moneys back to the company." On cross-examination, this witness, referring apparently to the same conversation with the defendant, said further: "I had a talk with him. I told him there was an attachment, and that we would criminally prosecute him unless he straightened things out. He acknowledged to me his wrongdoing and asked me—begged me—I should leave him alone; that I should not do anything; that he would raise the money in a few days, and pay it to us; and I agreed to that." While this proof, as has been suggested, might be enough to sustain the action as a suit for conversion, without proof of any demand, yet the defendant was clearly entitled to meet and rebut it, if he could, by giving his own account of what was said between him and the plaintiff's director of agencies in the interview or interviews concerning which Freeman testified as above stated. This right, however, was refused him. When the defendant was on the stand, he was asked upon his direct examination, "What conversation did you have with Alfred Freeman after this check had come back protested?" This was objected to as immaterial, irrelevant, and incompetent, and the defendant duly excepted to the ruling of the court sustaining the objection. This ruling was clearly erroneous. It was admitted that Freeman was an officer of the plaintiff corporation, and the defendant was not only entitled to contradict or qualify his testimony as to the particular conversations which Freeman had mentioned, but to testify himself to any other conversations with Freeman which tended to explain the defendant's attitude towards the insurance company in respect to his failure to turn over the commissions represented by his check. If he had been allowed to do this, an issue of fact might have been raised which the court would have been required to submit to the jury.

The claim that the plaintiff had extended the defendant's time for the payment of any amount in which he might be indebted to the cor-

poration was based upon a contract between Ella S. Thompson, the defendant's wife, and the National Life Association, acting through Albert Freeman, which was evidenced by an instrument signed by Freeman in behalf of the corporation, and bearing date March 28, 1896. This instrument certified that the National Life Association that day received from Mrs. Thompson an assignment of a chattel mortgage held by her upon the property of her husband, and that the same had been taken by the association as collateral security for sums of money which were then due or might thereafter become due from the defendant to the association. It further declared that upon the satisfaction and payment on or before the 30th day of September, 1896, of the said moneys, the association would reassign the chattel mortgage to Mrs. Thompson. In behalf of the plaintiff it is contended that this instrument related to other indebtedness than that which was represented by the check in this suit, and had nothing whatever to do with the claim which is the subject-matter of this action. As the case was tried, the court was probably right in excluding this contract, for the reason that there was no proof given or offered distinctly tending to show what indebtedness was intended to be secured by the execution of the paper. If, however, anything was said, at or about the time of its execution, between Mrs. Thompson, with the authority of her husband, on the one hand, and Mr. Freeman, who acted for the plaintiff in obtaining the paper, on the other hand, it would be competent to prove their conversation so far as it might show what claims were really intended to be secured by the assignment of the chattel mortgage, and were, therefore, to be regarded as contemplated by the contract. Parol proof would be admissible on this subject, inasmuch as the instrument itself leaves the matter in doubt. The precise time when the present action was commenced may have an important bearing on the effect of this extension agreement, but that date can be accurately fixed upon the new trial which we feel constrained to order on account of the error, already discussed, in excluding the defendant's testimony as to his conversations with the plaintiff's director of agencies.

The judgment and order should be reversed, and a new trial granted; costs to abide the event. All concur.