THE NATIONAL LIFE ASSOCIATION of Hartford, Connecticut, Respondent, *v.* FRANCIS A. THOMPSON, Individually, and FRANCIS A. THOMPSON, Trustee, Doing Business Individually under the Assumed Name of FRANCIS A. THOMPSON, Trustee, Appellant.

*Conversion — the refusal of a bank to pay a check given by an agent for moneys collected for his principal — it does not establish a conversion — admissions testified to as made by the agent may be explained by him.*

Proof that a check, given by an agent for moneys of his principal collected by the agent, was refused payment by the bank on which it was drawn, unaccompanied by any evidence of a demand therefor made upon the agent, is not, of itself, sufficient to sustain an action against him for the conversion of the moneys represented by the check.

Where, upon the trial of such an action, the director of agencies of the principal testifies to conversations in which the agent admitted appropriating to his own use the moneys represented by the check, the agent is entitled to meet and rebut such testimony by giving his own version of such conversations.

APPEAL by the defendant, Francis A. Thompson, individually, and Francis A. Thompson, trustee, doing business individually under the assumed name of Francis A. Thompson, trustee, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 15th day of July, 1898, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the 24th day of June, 1898, denying the defendant's motion for a new trial made upon the minutes.

This appeal was transferred from the first department to the second department.

*Louis Cohen*, for the appellant.

*E. T. Lovatt*, for the respondent.

WILLARD BARTLETT, J.:

In this action the defendant has been held liable for the conversion of $1,762.75, which he collected as the New York agent of the plaintiff corporation. His defense consisted of a general denial and an averment that on or about the 26th day of March, 1896, for a valuable consideration, the plaintiff had extended the time for the payment of any indebtedness, then or thereafter to become due to it from the defendant, to the 30th day of September, 1896, a date

subsequent to the time of the commencement of the action. At the conclusion of the evidence on both sides, the learned trial judge instructed the jury that the action was a suit for conversion in which no defense had been made out, and directed them to find a verdict in favor of the plaintiff for the amount already mentioned, together with interest.

The particular claim which gave rise to this action grew out of certain collections made by the defendant as the plaintiff's agent in New York for the week ending March 21, 1896. Out of these collections, according to the terms of his contract with the plaintiff corporation, the defendant was entitled to retain certain commissions. He deducted these, and sent the plaintiff his check for the balance of $1,762.75. This check was not paid upon presentation at the bank on which it was drawn, and thereupon the plaintiff began proceedings by attachment against the defendant.

There was no proof that any demand had ever been made upon the defendant for the moneys represented by the check; and the simple fact that it was not paid when presented at the bank, and was pronounced not good by the teller, who refused payment, did not suffice to establish a case of conversion against the defendant. "An agent or a person acting in a fiduciary capacity is not subject to an action of tort, for mere acts of omission, such as not paying over money due, but only for acts of misfeasance, and in an action against an agent or attorney for not accounting, or not paying over a balance found due on an accounting, the plaintiff does not by adding to the allegation that the defendant has refused to pay over the money due, an assertion that he has converted it to his own use, convert the action into one for a tort." (*Segelken* v. *Meyer*, 94 N. Y. 473, 484.)

There was, however, some other evidence in the case from which it might be inferred that the defendant had actually converted this money, that is to say, had either spent it for his own purposes, or asserted such a dominion over it as to amount to a denial of the plaintiff's right thereto. Albert Freeman, the director of agencies of the plaintiff corporation, testified to a conversation with the defendant after his check had been dishonored and the attachment proceedings had been begun, in which the witness said he told the defendant plainly that he had used the money belonging to the company which, under his contract, he was to account for every week.

"He told me many times," said Freeman, "that he had done wrong. * * * He came over to me and begged me I should not push the case against him. * * * He said he was very sorry that he was not in a position to pay the moneys back to the Company." On cross-examination this witness, referring apparently to the same conversation with the defendant, said further: "I had a talk with him, then I told him there was an attachment and that we would criminally prosecute him unless he straightened things out. He acknowledged to me his wrong-doing and asked me, begged me, I should leave him alone; that I should not do anything; that he would raise the money in a few days and pay it to us, and I agreed to that."

While this proof, as has been suggested, might be enough to sustain the action as a suit for conversion, without proof of any demand, yet the defendant was clearly entitled to meet and rebut it, if he could, by giving his own account of what was said between him and the plaintiff's director of agencies in the interviews concerning which Freeman testified as above stated. This right, however, was refused him. When the defendant was on the stand he was asked upon his direct examination: "What conversation did you have with Alfred* Freeman after this check had come back protested?" This was objected to as immaterial, irrelevant and incompetent, and the defendant duly excepted to the ruling of the court sustaining the objection. This ruling was clearly erroneous. It was admitted that Freeman was an officer of the plaintiff corporation, and the defendant was not only entitled to contradict or qualify his testimony as to the particular conversations which Freeman had mentioned, but to testify himself to any other conversations with Freeman which tended to explain the defendant's attitude toward the insurance company in respect to his failure to turn over the commissions represented by his check. If he had been allowed to do this, an issue of fact might have been raised which the court would have been required to submit to the jury.

The claim that the plaintiff had extended the defendant's time for the payment of any amount in which he might be indebted to the corporation, was based upon a contract between Ella S. Thompson, the defendant's wife, and the National Life Association, acting through Albert Freeman, which was evidenced by an instrument

---

* *Sic.* (Albert?)

signed by Freeman in behalf of the corporation, and bearing date March 28, 1896. This instrument certified that the National Life Association that day received from Mrs. Thompson an assignment of a chattel mortgage held by her upon the property of her husband, and that the same had been taken by the association as collateral security for sums of moneys which were then due or might thereafter become due from the defendant to the association. It further declared that upon the satisfaction and payment on or before the 30th day of September, 1896, of the said moneys, the association would reassign the chattel mortgage to Mrs. Thompson. In behalf of the plaintiff it is contended that this instrument related to other indebtedness than that which was represented by the check in this suit, and had nothing whatever to do with the claim which is the subject-matter of this action. As the case was tried, the court was probably right in excluding this contract, for the reason that there was no proof given or offered distinctly tending to show what indebtedness was intended to be secured by the execution of the paper. If, however, anything was said at or about the time of its execution between Mrs. Thompson, with the authority of her husband, on the one hand, and Mr. Freeman, who acted for the plaintiff in obtaining the paper, on the other hand, it would be competent to prove their conversation so far as it might show what claims were really intended to be secured by the assignment of the chattel mortgage, and were, therefore, to be regarded as contemplated by the contract. Parol proof would be admissible on this subject, inasmuch as the instrument itself leaves the matter in doubt.

The precise time when the present action was commenced may have an important bearing on the effect of this extension agreement, but that date can be accurately fixed upon the new trial which we feel constrained to order on account of the error, already discussed, in excluding the defendant's testimony as to his conversations with the plaintiff's director of agencies.

The judgment and order should be reversed and a new trial granted, costs to abide the event.

All concurred.

Judgment and order reversed and new trial granted, costs to abide the event.